May it please the Court, my name is Patience Milrod, I represent the appellant Alcide Broussard. As the Court is aware, there are two issues argued in our briefs. The issue that relates to whether or not Mr. Broussard should have suffered a career offender enhancement, I think, has been substantially decided by this Court in Piccolo. I understand that there's a request for en banc hearing in Piccolo, and that's not as yet been resolved. As I understand the ruling in Piccolo, referring specifically to footnote 7 at page 1088, the ruling would seem to require reversal of the sentence in this matter and a remand for determination under a modified categorical approach, whether or not in this case the record would support a finding that this, in this case, this was a crime of violence. And so what was the government showing on that point? There wasn't any. None at all. Okay. There was, at the excerpts of record, we've attached the government's package, and it's got what appears to be the, it's a kind of an odd, it's an Oklahoma deal where it's a court order. My client has not signed it. It seems to be not a transcript, but a paraphrase of the proceedings in the court. He pled and was sentenced on the same day, and there are no details, factual details about the circumstances of the offense in that document. And that's basically it. I think there's a document from the Oklahoma Bureau of Corrections that records that he was on such and such a date when his parole was, he completed parole in one case, and then he was remanded to serve his escape sentence, which had run consecutive. Counsel, if I can interrupt you for just a second. As I understand it, your contention is that because you can have escapes that are nonviolent, right, they're nonviolent escapes, therefore they would not qualify under the Taylor categorical approach. Is that correct? Exactly, yes. All right. We don't know what the facts were for that escape. And I don't think Taylor contemplates that anybody is going to get very deep into the facts. We're not going to have an evidentiary hearing. If we do a modified, even if this court remands and there's an evaluation under a modified categorical approach, the district court will look at the charging document. If there's a transcript of the plea proceedings, will any factual findings that the trial court made that were accepted by the defendant, it's a very limited kind of an inquiry. And none of that was available to the sentencing judge in this case, correct? That, as far as I'm aware, trial counsel, I was not trial counsel, but trial counsel for my client in the sentencing proceedings adverted a number of times to what he understood the facts of the escape were. But I don't know where he got that information. I haven't seen it myself. And that was not made available to the trial court in any other manner except trial counsel's representations. And I think what the U.S. attorney had available to him is in the excerpts of record at pages 38 at SEC, I believe. Counsel, we'll check the status of Piccolo, but assuming that it is still in this, in bank hiatus or even goes in bank, I assume you would prefer that we defer submission until we know what the status of Piccolo is? That would be, well, at this point we win. So I don't, you don't have to defer. But I'm sure the United States attorney will be requesting that you do that. I don't know if the Court needs to hear argument about this, but in this particular case, this is sort of emblematic of what the problem is in considering an escape per se, automatically, categorically, a crime of violence. I don't think that if we were to delve into the facts here, we would find that. And the courts, I know the other 11 circuits have found, you know, but I think that that's based on an impermissible set of speculations about what might happen when someone goes after the escapee, and I don't think that that's within the forecourt. What about the first issue, the prosecutorial misconduct? Yes. The other issue has to do with Mr. Rice having adverted in closing argument to evidence that was stricken. Obviously, the parties disagree about what was stricken. What we know was there was an objection made and that something was stricken, and we don't – I think that the government's brief accurately sets forth the transcript, but I don't think we can – I think there's some ambiguity about it. I think what resolves that ambiguity for us is Judge Wanger's statement at sentencing on July 1st, 2005, that there is no evidence in the record of an October 2002 trip to Oklahoma to make sales, and therefore, we're excluding those quantities, we're excluding that as offense conduct because there is no evidence in the record. And that, of course, is the appellant's position that the – what the government attempted to put into evidence was statements – were statements from the informant about his suggestions about how the sales trip should be made. There weren't even any – there wasn't any testimony about what he – about something my client said or something my client did. It was all about Mr. Moreno saying, well, you know, I think Penn should go, and, you know, he can drive. I'm – that's not really very probative. And it was Judge Wanger's conclusion that there wasn't evidence to support that conduct. So that would be our – therefore, Mr. Rice's arguing it was error. And so we are – But speaking of error, our standard of review would have to be plain error here because the objection was not on this ground. Isn't that correct? Well, I'd respectfully disagree. The – I think the question is whether or not when trial counsel objected to this testimony about, yeah, they were going to take a blue Ford and they were going to do this and they were going to do that, and I suggested that Penn drive, and those statements from Moreno that described the proposed voyage to Oklahoma to sell cocaine and PCP, whether or not those statements were – all of them were stricken, which would have been appropriate, and the objection was made – the hearsay objection was made appropriately, or whether or not just some of those were stricken. Does that protect the position with respect to prosecutorial misconduct? Yes, because if the – well, if I'm understanding your question correctly, if all of those statements – if that part of the story was stricken, then the prosecutor's referring to it later. And I do think the colloquy between the court and trial and the counsel at trial was instructive about this at the – during closing argument, because the prosecutor begins to argue it and trial counsel objects and the judge says, you know, there's some discussion about did it come in and what came in. And so I think that will be helpful to this Court as you evaluate that. Are there other questions?  You may reserve. Absolutely. We'll hear from the government. May it please the Court, Kevin Rooney on behalf of the United States. Let me deal very – Excuse me. What is your name? Kevin Rooney, R-O-O-N-E-Y. All right. I have a different name. I have a Carl Fowler. Yes, I do. I'd advise the Court that I'd be pensioner. All right. That's fine. Kevin Rooney. Very good. You're also an assistant U.S. attorney? Yes. Very good. Thank you. You may proceed. With regard to the career offender categorization and the Piccolo case, it is the government's request, of course, that we just defer the ruling here until the Court sorts out what it is or is not going to do. My review of the Court's docket is, as of yesterday, Mr. Piccolo has submitted a reply to the government's petition for a rehearing en banc. Obviously, there's nothing – there's nothing been decided. Okay. The government does agree that the Piccolo case would control for now, and if the Piccolo ruling stands, this case would be remanded for further proceedings as to that. With regard to – Pardon? Further proceedings. With regard to assessing Mr. Broussard's prior conviction to see if there is documentation that would establish whether it is or is not a violent felony. Is there any other – I'd be happy to entertain any other questions about that. With regard to the alleged misconduct, I think it's a very fact-specific, a very, so to speak, record-specific question. I've got the transcript in front of me, and starting at page 100. Well, start first with whether we're looking at plain error or clear error. I – that issue hasn't been raised specifically in the brief. My take on that is that it would be a – it would not be plain error that trial counsel did object, did raise an objection, and that counsel preserved their – preserved an objection and would not be reviewed on plain error. As to the misconduct, as to hearsay, if we're saying that everything's hearsay and let me – let me draw the distinction. If we're going as to misconduct, that counsel in the trial court commuted misconduct by merely referring to that, I think that's been preserved. If we're saying that this entire – all this stuff, all the evidence as to the trip in October, the proposed trip in October that the government's witness did not go on but learned about was hearsay, that should be reviewed under plain error because there was a very limited objection and a very limited ruling. Starting at page 134 of the transcript, the witness starts talking about this trip. How did you become aware of the plan? And he talks about he and this Trent Davis were talking about it. And the testimony about that trip goes on for a page, and then the informant says he was invited to go. The officer said that he couldn't do that because he wasn't ready yet. They'd start to do it – they'd get ready for the next trip. And defense counsel objected. His first objection is beyond the scope of the question. His second question is that it's hearsay. And the court orders it stricken only to a part. After the witness stated he did not go, the balance of the answer is stricken. Counsel, the prosecutor, then asked some more questions about this trip in October, continued on, no objection. And at page 141 of the transcript, the defendant or, excuse me, the witness went in again talking about I did go on a trip in December, and we planned for this carefully because I couldn't go on the previous trip. All that being said, all this about the record being said, I think the government's position is put forth in the brief is exactly right. The objection that was sustained was the witness started to go on about why he couldn't go on this trip, what the investigators' thought process were. Counsel properly objected. The trial court properly limited that testimony. And the argument was perfectly proper. Counsel, let me interrupt you for just a second. Let me just ask you a simple question. If we disregard the evidence or the comment that's being objected to, without that evidence, without that comment about the October trip, was there enough evidence such that a reasonable jury could find the defendant guilty beyond a reasonable doubt? Absolutely. That's an isolated comment or an argument. Counsel's argument is extremely brief. The court's got the record. The government's counsel's argument is extremely brief. But this is not a central part of their argument. This doesn't seem to me to be a central part of the case. If anything, it's harmless error. If the defendant's argument seemed to shift between the opening brief and the reply brief, again, if we're saying this whole – if counsel's argument now is this whole thing was hearsay and never should have been brought in, that's plain error. It's a new issue raised in the reply brief. There seems to be plenty of foundation because the witness testifying is very familiar with Mr. Davis and the defendant. He associated with them on a daily basis in this drug business. There seems to be plenty of foundation. It also seems to be a strategic decision by defense counsel not to force more foundation, not to add more ammunition for the government. So I think it's pretty clearly covered. If you read the transcript, it's very clear that the court, when it sustained the objection, was very, very limited in what – what part of the testimony was stricken. And again, at page 141, lines 3 to 8 of the transcript, again, the government prosecutor went back to this October trip and there was no objection whatsoever. I think I could – I'd like to go back to the sentence in the last question. Okay. Mr. Davis, I'm assuming that the Colo standards states, you say that it should be remanded? Correct. Why is that? Because the court, the sentencing court – Did you get a second bite at the apple? We get to do justice. Why do – why – you had an opportunity to present the appropriate evidence for sentencing, and categorically, under Colo at least, it does not apply because of the fact that there could be a walk-away escape. Now, you didn't provide anything else that would justify under the modified approach. So why should it go back again? Because I don't see any unfairness. The government relied on the state of the law. Every other circuit that had looked at this issue, every circuit that had looked at the issue had said, you just look at it categorically, all escapes are crimes of violence. The government put in the record the other points removed. The court never even looked at, okay, if we look at this, is this just a, quote, unquote, walk-away? Is this something else? Nobody went there because the state of the law made that unnecessary. But part of the statute says the person can be a trustee or awaiting transport. Neither of those have anything to do with violence, do they? I think the – where all the other circuits have come down is that once somebody escapes, the escape normally, unless, you know, we've got a wild – Sure, a statute is a statute. Each state's statute might be somewhat different. Where I think the reasoning is in the other circuits is that it's not necessarily the escape that's violent. In fact, the vast majority of escapes are not going to be violent. It's the recapture that presents the risk of violence and the recapture that puts the public at risk. And that's why escape is categorically a crime of violence. So that's the distinction I see. In other words, all escape statutes are per se crimes of violence? That's my understanding, yes. Going back again to whether it should be remanded, I don't see it as a second bite of the apple. I see it as the rules change. Both parties will go back and will litigate. What rules change? The state of the law in every other circuit was a certain way. What about other circuits? What about our law? Our law was undecided. I see where the Court's going. Why shouldn't you put in whatever you needed under the Ninth Circuit law? Another thing to point out is that the district court, because it took a certain view of the law, never decided whether or not what the government put in was or was not sufficient. I've looked at it. I can't tell. I just read through it while counsel was arguing. There's a lot of documents. At one point there, there's a clear indication that it's an escape. Mr. Broussard, in his reply to the government's, in his objections to the pre-sentence report at excerpt of Record 65, admitted he escaped. But the district court never made its decision as to whether or not this particular escape and the circumstances would fall under that. What was the government put in that would justify a finding under the modified approach? I'm not aware that we did or did not. I don't, I think. Well, you ought to be. I mean, that's one of the crucial issues of the case. And you don't know what the government put in? I don't know that the government reached that particular issue. No, I'm sorry. I can address that later, but I don't know that at all. Well, they reached the issue. I mean, you have a modified approach and you have a categorical approach. Ninth Circuit law at that time didn't say that it was a categorical violation. And so why wouldn't the government put in whatever it needed under the modified approach? I don't want to speculate as to that. And you don't know what they did put in? The record speaks for itself, unfortunately. Yeah, well, I'd like to know what the record says. I can't help you with that. All right. Thank you, counsel. Your time has expired. Ms. Milrod, you have some reserved time. Thank you. I would like to point out with respect to whether or not escape is categorically a crime of violence, that the conduct that all the other circuits so fear is generally criminalized under other statutes, resisting, delaying, obstructing an officer, or firing a handgun, or whatever the conduct would be, the violent conduct that arises from somebody trying to elude recapture is otherwise criminalized. And so to incorporate that conduct or to assume that conduct into the statutes that criminalize escape is not warranted, and there's probably a separation of powers problem there, among other things. So I would point out that not only is it inappropriate, it's also unnecessary to assume that the escape, a for sure, I will create a risk, a serious risk of physical harm to another person. If we didn't have the Piccolo case, where would we be? We would be looking carefully at the Oklahoma statute. We would see that the Oklahoma statute criminalizes what is patently nonviolent conduct, which is a trustee failing to return after a furlough or whatever. And we would see that it is not necessary, the elements of the crime do not anticipate necessarily that there be violence, and that the nature of the crime itself as described in the Oklahoma statute does not assume violence or risk of violence. Because a trustee could simply walk away. Exactly. And not. Exactly. Or fail to return. Self-surrender eventually. Exactly. She learned there was a warrant out for their arrest. Exactly, which is what happens the vast majority of times, is my understanding. Do you know whether what the government put in would justify a modified approach? No, Your Honor. All I know about what was available is what is in the excerpts of record at page 44. I can't remember it, but it's in those pages following that. And I do think it would be a waste of time to send this back, because I don't believe the government can make it of showing. That's kind of what I'm interested in, is whether the government could make it from the evidence that was put in at that time, not on remand. Well, I'm sure the Court will take with much salt what I have to say about what the government could do. But it does, when we look at what we anticipate examining under the modified categorical approach, there's a statutory definition. We have that. Yeah. It doesn't contemplate violence. There's the charging document. I'm sure Mr. Rice is a very careful and thorough and conscientious prosecutor. If he had access to this information, he would have submitted it to the trial court. I haven't seen the charging document. All I've seen is that sort of odd plea judgment document that's in the record. What about the plea colloquy? There's no plea colloquy that I know of that's a transcript. We have, again, the paraphrase. And we have no factual findings from the trial court in Oklahoma about the circumstances of the escape. Your questions have taken you over time, counsel. Thank you. Thank you very much. You're very welcome, counsel. The case just argued will be submitted for decision.
judges: Hug, O'scannlain, Benitez